EXHIBIT A



**SHERIFF - CORONER**

**COUNTY OF SANTA CRUZ**

STEVE ROBBINS
SHERIFF-CORONER

701 OCEAN STREET, ROOM 340, SANTA CRUZ, CALIFORNIA 95060
PHONE (831) 454-2311 FAX (831) 454-2353 TDD (831) 454-2123

SANTA CRUZ COUNTY SHERIFF'S OFFICE
90 DAY HOLD NOTICE

DATE:   July 21, 2005

TO:     The Gold Mart
        2011 Camden Avenue
        San Jose, California 95124
        Phone: (408) 371-6028   Fax: (408) 371-3702

Pursuant to California Business and Professions code section 21647, the SANTA CRUZ COUNTY SHERIFF'S OFFICE, is placing a 90 day "HOLD" on the property itemized below. This property is suspected of being stolen or is evidence of a crime.

The Investigator assigned to this case is DETECTIVE ART FROLLI #62, of the SANTA CRUZ COUNTY SHERIFF'S OFFICE.

You may contact DETECTIVE FROLLI at (831) 454-5397. Correspondence may be sent to SANTA CRUZ COUNTY SHERIFF'S OFFICE, 701 Ocean Street #340, Santa Cruz, CA. 95060.

The related case number for this investigation is:   05-4033

**THIS PROPERTY IS NEEDED FOR A CRIMINAL INVESTIGATION. YOU ARE DIRECTED TO "HOLD" THESE ITEMS OR ITEM, UNTIL THERE IS A DETERMINATION ON THE STATUS OF THIS PROPERTY.**

ITEMIZED LIST OF PROPERTY TO BE HELD:
Items listed on the following pawn slips: No. 4020, No. 4021 & No. 4022.

No. 4020:   "1pr 18ky dia ear knott style aprox .06 ea  used/worn"

No. 4021:   "Heart pend w/sm rd center dia aprox .02 w/20" chain 14ky  used/worn"

No. 4022:   "7.5 pearl neck 22" w jade clasp 18ky w matching ear used/worn"

Detective Art Frolli #62

*[signature]*

EXHIBIT B



The Law Offices of
JON WEBSTER

July 22, 2005

*Sent via Facsimile to (831) 454-2353
and by United States Mail*

Detective Art Frolli
Santa Cruz County Sheriff's Office
701 Ocean Street, Room 340
Santa Cruz, CA 95060

    Re:    Confirmation of Receipt of 90 Day Property Hold (Cal. B&P §21647)
           Served on:    My Client:    The Gold Mart
                                               2001 Camden Ave, San Jose, CA
           in re:          Collateral Loan Tickets, Nos. 4020, 4021, and 4022

Detective Frolli:

This letter, also sent via facsimile, will confirm my client's receipt of the hold you have placed on the property associated with collateral loan contracts numbers 4020, 4021 and 4022. Said property will be set aside per Business and Professions Code, Section 21647. This property will be held for the statutory 90 days, unless my client is notified otherwise. Thank you for acknowledging and following this procedure.

As a courtesy, I would request that a copy of your crime report be forwarded to the City of San Jose police department and/or the Santa Clara District Attorney's Office with a request that your investigation be considered for criminal prosecution by these agencies for a violation of California Penal Code, Section 484.1, False Information to a Pawnbroker; to wit, The Gold Mart.

Finally, enclosed with the original of this letter, you will find a copy of the Ninth Circuit Court of Appeal decision in the case entitled, *G&G Jewelry v. City of Oakland* 989 F.2d 1093 (1993). I provide this in follow-up to the voice mail message I left at your desk last Friday, July 15th.

1985 BONIFACIO STREET ○ SUITE 102 ○ CONCORD, CA 94520-2264
TELEPHONE (925) 686-8790 ○ WEBSITE: WWW.JWCOUNSEL.COM ○ FACSIMILE (925) 686-8795

ADMITTED IN CALIFORNIA, ARIZONA, HAWAI'I AND WASHINGTON D.C.

*Letter and Facsimile to Detective Art Frolli*
*Santa Cruz County Sheriff's Office*
*Re:   Confirmation of Receipt of 90 Day Property Hold,* Cal. Bus & Prof Code, §21647
*   in re:  The Gold Mart*
*July 22, 2005*
*Page 2 of 2*

---

As you will recall, on that date, I was informed by my client that you had sent the alleged crime victim to her store to recover the allegedly stolen property from the possession of The Gold Mart. This person was accompanied by a uniformed San Jose police officer to enforce your instructions, an embarrassing and wholly unnecessary use of force. In my phone message, I advised you of the 90 day hold provisions applicable to collateral loan dealers like The Gold Mart and provided you reference to *G&G Jewelry*. I ask that you review this decision anew.

In *G&G*, the Ninth Circuit stated, "The police clearly are not authorized by California law to seize property from a pawnbroker for the purpose of returning it to the person who had reported the property stolen." *Id.*, pg 1102. It would be my position that your directions to the alleged crime victim violate the Ninth Circuit's holding, and would subject the County of Santa Cruz to liability under the Civil Rights Act, 42 United States Code, §1983.

Please understand that my client will fully comply with your request and that she has always worked closely with local law enforcement officers. Your hold will be accorded the same dignity and respect.

If you have any further questions, please do not hesitate to contact me.

Thank in advance for your courtesy and cooperation.

Very truly yours,

JON WEBSTER
JW:dma
cc:   The Gold Mart

*The Law Offices of*
JON WEBSTER

1985 Bonifacio Street ○ Suite 102 ○ Concord, CA 94520-2264
Telephone (925) 686-8790 ○ Website: www.jwcounsel.com ○ Facsimile (925) 686-8795

Westlaw

989 F.2d 1093                                                                                                       Page 1

989 F.2d 1093

(Cite as: 989 F.2d 1093)

▷

United States Court of Appeals,
Ninth Circuit.
G & G JEWELRY, INC., dba United Jewelry Mart;
Robert P. Goldstone, Plaintiffs-
Appellants,
v.
CITY OF OAKLAND, Henry L. Gardner, City
Manager; George T. Hart, Chief of
Police; Thomas O. Donahue, Deputy Chief of
Police; Jay Crawford, Sergeant;
Craig D. Stewart, Sergeant; Jonathan Madarang,
Officer; Jane W. Williams,
City Attorney; Wendy P. Rouder, Assistant City
Attorney, Defendants-Appellees.
No. 90-15771.

Argued and Submitted June 10, 1991.
Decided March 31, 1993.

Pawnbroker brought § 1983 action seeking damages and injunctive relief from police policy of seizing stolen goods for purposes of returning them to person reporting them stolen. The United States District Court for the Northern District of California, Eugene F. Lynch, J., granted summary judgment for defendants, and pawnbroker appealed. The Court of Appeals, Hug, Circuit Judge, held that: (1) fact question as to whether police seized property to return it to person reporting it stolen in circumvention of required statutory procedure, included summary judgment, and (2) plain view seizure was permissible.

Reversed and remanded.

West Headnotes

[1] Federal Civil Procedure ⚷2491.5
170Ak2491.5 Most Cited Cases
Fact question as to whether police seized property from pawnbroker for investigatory purposes, or to return property to person reporting it stolen in circumvention of required statutory procedure precluded summary judgment on pawnbroker's § 1983 claim. West's Ann.Cal.Bus. & Prof.Code § 21647; 42 U.S.C.A. § 1983; U.S.C.A. Const.Amend. 14.

[2] Consumer Credit ⚷7
92Bk7 Most Cited Cases
Pawnbroker, as pledgee, has legitimate possessory interest in property as against rest of the world except person having title to property.

[3] Searches and Seizures ⚷84
349k84 Most Cited Cases
It is implicit in California's statutory scheme dealing with property received by pawnbroker in course of business that, if police require property as evidence in criminal investigation, police must return property to pawnbroker upon termination of their need for the property; police have no authority to make determination of ownership or right to possession pending resolution of possessory rights. West's Ann.Cal.Bus. & Prof.Code § 21647.

[4] Consumer Credit ⚷7
92Bk7 Most Cited Cases

[4] Searches and Seizures ⚷84
349k84 Most Cited Cases
Under California's statutory scheme dealing with property received by pawnbroker in course of business, police may not seize property from pawnbroker for purpose of delivering it to alleged owner. West's Ann.Cal.Bus. & Prof.Code § 21647; U.S.C.A. Const.Amend. 14.

[5] Searches and Seizures ⚷49
349k49 Most Cited Cases
Plain view exception justified police, who were lawfully inspecting pawnshop property, in seizing for investigatory purposes pawned property they had probable cause to believe was stolen. U.S.C.A. Const.Amend. 4.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093

Page 2

989 F.2d 1093

(Cite as: 989 F.2d 1093)

\*1094 Henry O. Noffsinger, Pleasant Hill, CA, for plaintiffs-appellants.

Diane J. Simon, Asst. to the City Atty., City of Oakland, Catherine M. Steane, Oakland, CA, for defendants-appellees.

Appeal from the United States District Court for the Northern District of California.

Before: HUG, SCHROEDER and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

This case concerns the warrantless seizure from a pawnshop of property that had been reported stolen. The owner of the pawnshop contends that the police did not faithfully follow the provisions of a California statute designed to deal with this situation. Further, he contends that this warrantless seizure violated the Fourth and Fifth Amendments as incorporated into the Fourteenth Amendment of the United States Constitution. The district court granted summary judgment for the defendants. We reverse.

I.

On July 6, 1988, Michael Watson filed a report with the Oakland Police Department stating that he had been robbed of his camera and lens. Watson provided the police with descriptions and serial numbers of the stolen items.

On September 13, 1988, Frederick Brasley pawned a camera and lens at appellant Robert Goldstone's pawnshop, United Jewelry Mart. Brasley signed the standard form certifying that he was the owner of the property or otherwise had authority to sell it.
In accordance with California statutory reporting requirements, Goldstone submitted a report of the transaction to the Oakland Police Department identifying the camera and lens by brand name, model number and serial number.

After it received Goldstone's report of the transaction with Brasley, the Oakland Police Department placed a 90-day hold on the camera and lens pursuant to Cal.Bus. & Prof.Code § 21647 (West 1987). The police department's decision to invoke section 21647 required Goldstone to retain and not release or dispose of the property until December 27, 1988. The ensuing police investigation revealed that the property did, in fact, have the same serial numbers as the property Watson had reported stolen. Although the property appeared to have been stolen, the police concluded that Brasley had not stolen it.

Six days before the 90-day hold was due to expire, Officer Madarang of the Oakland Police Department presented to Goldstone a document that authorized release of the property to "Officer Madarang 7157C for M. Watson." The police department also \*1095 furnished a document entitled "Notice of Claim of Ownership," which indicated that unless Goldstone gave the police reason to believe that Watson was not the owner, the property would be turned over to Watson. Goldstone protested the seizure, but the officer took the camera and lens with him to the police station.

Goldstone filed suit against the City of Oakland, the police officers involved and others (collectively "the City") under 42 U.S.C. § 1983 seeking damages and injunctive relief. He argued that the Oakland Police Department policy of seizing stolen goods for the purpose of returning them to the person reporting them stolen is inconsistent with Cal.Bus. & Prof.Code § 21647 and violative of the Fourth, Fifth and Fourteenth Amendments. The district court granted the City's motion for summary judgment. Contrary to the purpose indicated in the documents provided to Goldstone by the police, the court concluded as a matter of law that the purpose of the seizure was to further investigate the robbery. The court further concluded that the seizure was justified under the plain view doctrine and that, because the seizure was reasonable, Goldstone's rights under the Fifth and Fourteenth Amendments had not been violated. Goldstone timely appeals.

II.

Obviously, this is a test case concerning the Oakland Police Department's dealings with the pawnshops. Similar situations were cited by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093

989 F.2d 1093

(Cite as: 989 F.2d 1093)

Page 3

appellants. The gravamen of the complaint is that the police are misusing a California statutory procedure to seize from pawnshops property that the police have determined to be stolen and then returning the property to the persons that the police believe are the rightful owners. This practice is not authorized by the statute. The manner in which the property in this case was seized by Officer Madarang and the standard notice forms utilized, which partially conformed to the statute and partially violated the statute, lend credence to Goldstone's complaint. The City counters that, quite apart from the statute, the police were authorized to make a warrantless seizure of the pawned property for investigative purposes because probable cause existed and the property was in plain view.

The district court based its summary judgment on the ground that this was strictly an investigatory seizure and that a warrantless seizure was justified on the basis of the plain view exception. We address first the application of the specific California statutory procedure dealing with pawnshops and then discuss whether a warrantless plain view seizure is constitutionally permissible in this circumstance. Finally, we discuss whether the specific statutory procedure is the exclusive method of seizing property in this situation.

III.

Significantly, Goldstone's challenge to the conduct of the officers in this case is brought against the backdrop of a state regulatory scheme that deals specifically with property received by a pawnbroker in the course of business. The State of California has adopted procedures to be followed when the police have probable cause to believe property in the possession of a pawnbroker has been stolen. *See* Cal.Bus. & Prof.Code § 21647 (West 1987 & Supp.1993). [FN1]

> FN1. The statute has undergone a number of revisions since Officer Madarang's seizure of the property. None of these changes are essential to our analysis and, except as otherwise noted, the provisions in the statute in effect at the time of the seizure are identical to the statute as it currently reads. Further, the statute now applies not only to pawnbrokers, but to secondhand dealers and coin dealers as well. The current version of section 21647 is appended to this opinion (in its entirety) as Appendix A.

The statute requires the pawnbroker to file a report with a police executive whenever property is pledged for sale. *Id.* at § 21628. Information in the report must include, *inter alia*, a description of the pledged property (including serial numbers, if available), the identity of the intended pledgor, and certification from the intended pledgor that he or she is the owner of the *1096 property or otherwise has authority to sell it. *Id.* at § 21628(a)-(g).

The statute also imposes certain obligations on the pawnbroker in the event a peace officer has probable cause to believe that property in the possession of the pawnbroker is stolen. Specifically, an officer with probable cause to believe an item has been stolen may place a "90-day hold" on such property during which time the pawnbroker is not permitted to release or dispose of the property unless authorized by a court order or a written authorization signed by a peace officer. *Id.* at § 21647(a). The statute has been amended to provide specifically for additional hold periods. *See id.* at § 21647(d) (West Supp.1993). However, the parties agreed at oral argument that additional holds were frequently used even before the seizure in this case. During the hold period, the pawnbroker, upon reasonable notice, must make the property available to a peace officer, provided the officer is a member of the law enforcement agency of which the peace officer placing the hold on the property is a member. *Id.* at § 21647(b).

If the property is no longer required for investigatory purposes and the law enforcement agency has no knowledge of the property on hold having been reported as stolen, the agency is required to release the hold on the property. *Id.* at § 21647(c)(1). If the property has been reported stolen, the law enforcement agency is required to notify the person who reported the stolen property

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093                                                                    Page 4

989 F.2d 1093

(Cite as: 989 F.2d 1093)

of the name and address of the pawnbroker holding the property and to authorize the pawnbroker to release it to the person who reported it stolen. *Id.* at § 21647(c)(2). [FN2] The law enforcement agency also must notify the person who reported the property stolen "that the law neither requires nor prohibits payment of a fee or any other condition in return for the surrender of the property." *Id.* In addition, the statute provides that "if the alleged owner chooses not to file a criminal complaint against an identified alleged thief, the alleged owner shall pay the pawnbroker ... the 'out-of-pocket' expenses paid in the acquisition of the allegedly stolen property in return for the surrender of the property." *Id.* (West Supp.1993). [FN3]

> FN2. The hold on the property is continued for an additional 60 days to allow the alleged owner an opportunity to recover it. *Id.* at § 21647(c) (West Supp.1993).
>
> FN3. This latter provision was not in effect at the time Officer Madarang seized the camera and lens; however, this fact is not essential to our disposition.

Section 21647(c)(3) provides for certain rights for the pledgor when the property is subject to a police hold. If the pledgor seeks to redeem the property subject to a hold, the pawnbroker must advise him of the name and badge number of the officer who placed the hold and the name of the law enforcement agency of which the officer is a member. *Id.* at § 21647(c)(3). If the property is no longer required to be held for purposes of a criminal prosecution, the hold is required to be released. *Id.*

It is apparent that there are three persons with potential property interests to be resolved, namely the pledgor, the pawnbroker, and the person claiming the property was stolen. The pledgor has pledged property that is worth more than the loan he obtained. The pawnbroker has loaned money on the security of the property pledged. The person reporting the property stolen has a claim that the pledged property belongs to him. The statutory procedures do not purport to resolve ownership of the property; they only dictate which party is entitled to possess the property until ownership is resolved by negotiation, agreement, or by some sort of civil litigation.

IV.

In this case, a 90-day hold was placed on the camera and lens in Goldstone's pawnshop. As that period drew to a close, the Oakland Police Department did not simply notify the person who reported the property stolen that the property had been discovered and require Goldstone to continue the hold for an additional period. Instead, Officer Madarang seized the property and delivered it to the police department property section. The parties dispute the legality *1097 and the purpose of Officer Madarang's seizure.

The City argues that the purpose of the seizure was to obtain evidence in an ongoing criminal investigation. The City points to affidavits which declare that when the camera and lens were seized, Officer Madarang told Goldstone that the property was evidence in a criminal investigation and that the property was ultimately booked in the police property section as evidence. Goldstone, however, maintains that the real reason the property was seized was for the purpose of returning it to Watson, the alleged owner. Goldstone points out that when Officer Madarang seized the camera and lens, he gave Goldstone two forms prepared by the Oakland Police Department.

The first form, to which we refer as the "Release Authorization," is reproduced in Appendix B. The release authorization apparently is designed to comply with section 21647(c)(2). Specifically, it purports to continue the hold for 60 days, to notify the person who reported the property as stolen that the property is being held at Goldstone's pawnshop, and to authorize the pawnshop to release the property to that person if that person requests it. It is important to note that the statute does not *require* the pawnshop to release the property, but *authorizes* the pawnshop to release the property to the person reporting it stolen.

[1] Although the release authorization in this case

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.