989 F.2d 1093                                                                    Page 4

989 F.2d 1093
(Cite as: 989 F.2d 1093)

of the name and address of the pawnbroker holding the property and to authorize the pawnbroker to release it to the person who reported it stolen. *Id.* at § 21647(c)(2). [FN2] The law enforcement agency also must notify the person who reported the property stolen "that the law neither requires nor prohibits payment of a fee or any other condition in return for the surrender of the property." *Id.* In addition, the statute provides that "if the alleged owner chooses not to file a criminal complaint against an identified alleged thief, the alleged owner shall pay the pawnbroker ... the 'out-of-pocket' expenses paid in the acquisition of the allegedly stolen property in return for the surrender of the property." *Id.* (West Supp.1993). [FN3]

> FN2. The hold on the property is continued for an additional 60 days to allow the alleged owner an opportunity to recover it. *Id.* at § 21647(c) (West Supp.1993).
>
> FN3. This latter provision was not in effect at the time Officer Madarang seized the camera and lens; however, this fact is not essential to our disposition.

Section 21647(c)(3) provides for certain rights for the pledgor when the property is subject to a police hold. If the pledgor seeks to redeem the property subject to a hold, the pawnbroker must advise him of the name and badge number of the officer who placed the hold and the name of the law enforcement agency of which the officer is a member. *Id.* at § 21647(c)(3). If the property is no longer required to be held for purposes of a criminal prosecution, the hold is required to be released. *Id.*

It is apparent that there are three persons with potential property interests to be resolved, namely the pledgor, the pawnbroker, and the person claiming the property was stolen. The pledgor has pledged property that is worth more than the loan he obtained. The pawnbroker has loaned money on the security of the property pledged. The person reporting the property stolen has a claim that the pledged property belongs to him. The statutory procedures do not purport to resolve ownership of the property; they only dictate which party is entitled to possess the property until ownership is resolved by negotiation, agreement, or by some sort of civil litigation.

IV.

In this case, a 90-day hold was placed on the camera and lens in Goldstone's pawnshop. As that period drew to a close, the Oakland Police Department did not simply notify the person who reported the property stolen that the property had been discovered and require Goldstone to continue the hold for an additional period. Instead, Officer Madarang seized the property and delivered it to the police department property section. The parties dispute the legality *1097 and the purpose of Officer Madarang's seizure.

The City argues that the purpose of the seizure was to obtain evidence in an ongoing criminal investigation. The City points to affidavits which declare that when the camera and lens were seized, Officer Madarang told Goldstone that the property was evidence in a criminal investigation and that the property was ultimately booked in the police property section as evidence. Goldstone, however, maintains that the real reason the property was seized was for the purpose of returning it to Watson, the alleged owner. Goldstone points out that when Officer Madarang seized the camera and lens, he gave Goldstone two forms prepared by the Oakland Police Department.

The first form, to which we refer as the "Release Authorization," is reproduced in Appendix B. The release authorization apparently is designed to comply with section 21647(c)(2). Specifically, it purports to continue the hold for 60 days, to notify the person who reported the property as stolen that the property is being held at Goldstone's pawnshop, and to authorize the pawnshop to release the property to that person if that person requests it. It is important to note that the statute does not *require* the pawnshop to release the property, but *authorizes* the pawnshop to release the property to the person reporting it stolen.

[1] Although the release authorization in this case

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093 Page 5
989 F.2d 1093
(Cite as: 989 F.2d 1093)

speaks of authorizing the release, Officer Madarang compelled the release to him by seizing it. The form delivered to Goldstone did not specify, as the statute requires, that during the additional 60-day holding period the property could be released to the person reporting it stolen. Instead, a blank after the statement "Property Released To:" was filled in with "J. Madarang 7157C for M. Watson." This notation indicated that the seizure was not for investigative purposes, but rather to return the property to Watson.

This indication is reinforced by the second form furnished to Goldstone, the "Notice of Claim of Ownership," reproduced in Appendix C. This form, as filled in, provided that the police department was satisfied that Watson was the owner of the camera and lens and that unless Goldstone gave the department reason to believe otherwise, within 20 days of the date of the seizure, the camera and lens would be turned over to Watson. Goldstone furnished a written protest at the time of the seizure and had Officer Madarang sign it. This protest was followed by a letter from Goldstone's counsel protesting the seizure as well as the expressed intention to return the property to Watson.

The manner in which the police use these forms and this procedure raises a genuine issue of material fact: are the police utilizing a procedure generally, and in this case in particular, to seize property allegedly as evidence in a criminal investigation but, in actuality, to return the property to the person reporting it as stolen? If so, the police are short-circuiting the statutory procedure. The Notice of Claim of Ownership said nothing about seizing the property for investigatory purposes; it said the property would be turned over to Watson in 20 days. In addition, Goldstone's affidavit specifically refuted Officer Madarang's statement that he told Goldstone he was seizing the property as evidence in an ongoing criminal investigation.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Even though Officers Madarang and Crawford submitted affidavits stating that the camera and lens were seized as evidence in a criminal investigation, the police forms and Goldstone's affidavit concerning his conversation with Officer Madarang indicate otherwise. There is, therefore, a genuine issue of material fact as to whether the camera and lens were taken for investigatory purposes.

The essence of Goldstone's complaint is that the police seized the property, not for legitimate criminal investigatory purposes, but for the purpose of returning it to the *1098 person reporting it stolen in circumvention of the required statutory procedure. Goldstone, and apparently other pawnbrokers, believe that this is established police practice. The manner in which the police forms were used in this case, particularly the Notice of Claim of Ownership, provides a reasonable inference that this is the case.

[2] We note that the pawnbroker, as pledgee, has a legitimate possessory interest in the property as against the rest of the world except the person having title to the property. *See Wolfenbarger v. Williams,* 826 F.2d 930, 933 (10th Cir.1987), *abrogated in part on other grounds,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The Supreme Court held in *Fuentes v. Shevin,* 407 U.S. 67, 87, 92 S.Ct. 1983, 1997-98, 32 L.Ed.2d 556 (1972), that the procedural protections of the Fourteenth Amendment apply to protect a significant property interest, regardless of the ultimate outcome of a hearing on the final entitlement to the possession and ownership of the property.

Section 21647 provides a practical solution for a nonjudicial resolution of the disposition of the property. Subsection (c)(2) authorizes the release of the property to the person filing the stolen property report, but it does not require such release. The statute specifies that "the law neither requires nor prohibits payment of a fee or any other condition in return for the surrender of the property." Moreover, the statute currently provides that if the alleged owner does not file a criminal complaint against an identified alleged thief, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093

989 F.2d 1093

(Cite as: 989 F.2d 1093)

Page 6

alleged owner must pay the pawnbroker his out-of-pocket expenses in order to obtain possession of the property.

The statute recognizes the legitimate possessory interest of the pawnbroker, but the statute does not purport to resolve ownership. It only resolves the right to possession until ownership is established by agreement or judgment of a court or is simply not contested.

[3] Section 21647(a) provides that the pawnbroker cannot be subject to civil liability for compliance with the statute. However, nothing in this statute precludes the person, who contends that he is the true owner and that the property was stolen, from bringing a civil action to recover the property or for damages for conversion if the property is not delivered to him after the statutory hold periods have expired. The section 21647 procedure represents a practical attempt at a statutory compromise concerning possession available to the parties. The statute does not authorize the police to take the property from the pawnbroker and to give it to the person contending it was stolen. If the police require the property as evidence in a criminal investigation, it is implicit in the statutory scheme that the police must return the property to the pawnbroker upon termination of their need for the property. The pawnbroker and claimed owner would then be free to resolve the possessory rights in a civil proceeding, by the compromise solution set forth in section 21647(c)(2), or by some other agreement. The police have no authority to make the determination of ownership or the right to possession pending such a resolution. Conceivably, the pledgor also might be asserting a right to redeem the property, although that is not the situation in this case.

[4] Clearly, if the property was taken for the purpose of delivering it to the alleged owner, such procedures would be improper under section 21647. A police officer acting as an agent for the alleged owner would not only be inconsistent with the statutory scheme, but also would be inconsistent with United States and California constitutional due process precepts. *Cf. Piatt v. MacDougall,* 773 F.2d 1032, 1036 (9th Cir.1985) (en banc) (deprivation of property interest requires meaningful hearing at a meaningful time); *Beaudreau v. Superior Court,* 14 Cal.3d 448, 121 Cal.Rptr. 585, 535 P.2d 713, 723-24 (1975) (same under California constitutional law). Because of the conflicting evidence presented in this case, a genuine issue of material fact exists as to whether the police officers took the property for a lawful purpose. Summary judgment was therefore improper. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

*1099 V.

The more difficult question raised by the appellants is whether the Fourth Amendment protects pawnbrokers from having their merchandise seized without a warrant whenever a police officer has probable cause to believe the property is stolen.

The Fourth Amendment protects two distinct interests that may be violated by illegal searches or seizures. The Supreme Court recently restated this principle:

[T]he first clause of the Fourth Amendment protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs where there is some meaningful interference with an individual's possessory interests in that property.

*Soldal v. Cook County, Illinois,* 506 U.S. 56, ----, 113 S.Ct. 538, 544, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)).

Goldstone does not argue that Officer Madarang invaded any privacy interest. Indeed, it is undisputed that the police were properly on the premises and were authorized to inspect the pawnshop property pursuant to Cal.Fin.Code § 21206 (West 1981). The inspection revealed the make, model, and serial numbers of the property reported as stolen and, thus, the evidence that the property was stolen was in plain view.

It is per se unreasonable to make a seizure without a warrant absent certain restrictive exceptions. *See*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093	Page 7

989 F.2d 1093

(Cite as: 989 F.2d 1093)

*United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983); *Johnson v. United States,* 333 U.S. 10, 14-15, 68 S.Ct. 367, 369-70, 92 L.Ed. 436 (1948). Here, the justification offered by the City for Officer Madarang's seizure of the camera and lens is the plain view exception. The City relies on *Horton v. California,* 496 U.S. 128, 142, 110 S.Ct. 2301, 2310-11, 110 L.Ed.2d 112 (1990), wherein the Supreme Court held that, in the context of a search being performed under a warrant, it was lawful to seize an item in plain view that was clearly contraband, even though the discovery of that item was not inadvertent.

The primary effect of *Horton* was to dispose of any inadvertence requirement to the plain view exception. *See id.* at 130, 110 S.Ct. at 2304. The question of whether the discovery of evidence in plain view must be inadvertent had been litigated with differing results in federal and state courts. *See id.* at 132 & n. 3, 110 S.Ct. at 2305 & n. 3. In deciding this question, the Court delineated three requirements which must be present in order for the plain view exception to apply. First, the Court recognized that the doctrine can only be applied if "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* at 136, 110 S.Ct. at 2308. Second, the Court noted that the incriminating character of the evidence "must also be immediately apparent." *Id.* (citations and internal quotations omitted). Third, the Court stated that the officer "must also have a lawful right of access to the object itself." *Id.* at 137, 110 S.Ct. at 2308.

The Court then noted in a footnote:
> This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.
> *Id.* at 137 n. 7, 110 S.Ct. at 2308 n. 7.

The district judge in this case held that a warrantless seizure based on probable cause was proper because the plain view exception applied. Goldstone had argued that the Supreme Court's plurality decision in *Coolidge v. New Hampshire,* 403 U.S. 443, 469, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971), had required not only that the property be in plain view, but also that it be inadvertently discovered. Goldstone *1100 further cited the Tenth Circuit's decision in *Wolfenbarger.* [FN4] The district court in this case presciently foresaw the Supreme Court's holding in *Horton* that inadvertent discovery was no longer a requirement.

> FN4. *Wolfenbarger* presented a situation involving a pawnshop very similar to this case. The Tenth Circuit held that the warrantless seizure was a violation of the Fourth Amendment. *See* 826 F.2d at 936-37. The court based the decision on the ground that the discovery was not inadvertent and thus did not fit within the plain view exception. *Id.* at 936.
> The Supreme Court in *Horton,* in noting the split in circuit decisions, identified the *Wolfenbarger* opinion as being among those circuit decisions that had held an inadvertent discovery to be a requirement for application of the plain view exception. *See* 496 U.S. at 132 n. 3, 110 S.Ct. at 2305 n. 3. This basis for the *Wolfenbarger* opinion was thus abrogated by *Horton.* This leaves unresolved, however, the question of whether the plain view exception applies when there is no exigency.

On appeal, Goldstone argues that the justification of exigency in seizing the property, noted in the *Wolfenbarger* decision, remains an open and unresolved question. *See Wolfenbarger,* 826 F.2d at 936. Goldstone also relies on footnote 7 in *Horton. See Horton,* 496 U.S. at 137 n. 7, 110 S.Ct. at 2308 n. 7.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093

989 F.2d 1093

(Cite as: 989 F.2d 1093)

Page 8

[5] This argument presents the novel constitutional question of whether the plain view exception can justify a warrantless seizure of property when there is probable cause to believe it has been stolen, even when any justification based on exigent circumstances is virtually eliminated. The California statutory scheme, with the 90-day hold period, assures continued availability of the property and obviates any exigent circumstances. This holds true unless, of course, it can be shown that the 90-day hold period is not honored by a particular pawnbroker or by pawnbrokers in general, which is unlikely in view of the criminal penalties for violations. *See* Cal.Bus. & Prof.Code § 21645 (West 1987). The statute provides for a fine of up to $1,500 and two months in jail for the first offense, $5,000 and four months in jail for the second offense, and $25,000 and six months in jail for subsequent offenses. *Id.*

Goldstone argues that footnote 7 in the *Horton* opinion indicates that exigent circumstances for the seizure itself still remains a requirement for a plain view seizure. We are convinced, however, that this is not a sound construction of the footnote. The Supreme Court in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), discussed the rationale and application of the plain view seizure doctrine. The Court noted that its prior cases indicate

"[P]lain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.
The principle is grounded on the recognition that when a police officer has observed an object in "plain view," the owner's remaining interests in the object are merely those of possession and ownership. Likewise, it reflects the fact that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property, or incriminating evidence generally would be a "needless inconvenience," that might involve danger to the police and public. We have said previously that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on ... Fourth Amendment interests against its promotion of legitimate governmental interests." In light of the private and governmental interests just outlined, our decisions have come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately.
This rule merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property.

*Id.* at 738-39, 103 S.Ct. at 1541-42 (footnote and citations omitted). The discussion in *Brown* makes it clear that there is no *1101 additional requirement of exigency for the seizure of property that is in plain view, provided that the police officer's presence on the property is lawful and the incriminating character of the evidence is immediately apparent. Footnote 7 in *Horton* is best understood as emphasizing that even though contraband plainly can be seen and identified from outside the premises, a warrantless entry into those premises to seize the contraband would not be justified absent exigent circumstances.

Thus, the district court correctly held that the plain view seizure for investigatory purposes did not violate Fourth Amendment prohibitions. Officer Madarang was authorized to be on the premises. The pawnbroker was required by statute to produce the pawned property for inspection, and the examination revealed that there was probable cause to believe that the camera and lens were stolen.

The plain view seizure, however, does not authorize police to seize property for the purpose of turning it over to the person claiming that the property was stolen from him. Furthermore, the fact that a plain view seizure is constitutionally permissible does not mean that it has been permitted under the appropriate California statute. Thus, we must examine the statutory authority for the police seizure of the property.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093
989 F.2d 1093
(Cite as: 989 F.2d 1093)

Page 9

### VI.

Goldstone contends that section 21647 is the exclusive procedure for the police to hold and obtain property suspected of being stolen. The City, on the other hand, contends that the police were authorized to seize the property without invoking the hold provisions of section 21647. Relying on *Christians v. Chester,* 218 Cal.App.3d 273, 267 Cal.Rptr. 124, *review denied,* (1990), the City contends that section 21647 merely provides an alternative procedure that may be utilized. *Christians* held that no language in section 21647 expressly or impliedly prohibits an officer from seizing property. 267 Cal.Rptr. at 125. *Christians* noted that Cal.Fin.Code § 21206.7, which was enacted prior to section 21647 and still remains in effect, impliedly recognized this inherent police investigative tool. *See id.* 267 Cal.Rptr. at 126.

Section 21206.7 provides:
> Whenever any property is taken from a pawnbroker by a peace officer which is alleged to be stolen property, the police officer shall give the pawnbroker a receipt for the property which shall contain a description of the property, the reason for seizure, and the names of the pawnbroker and the officer.

Cal.Fin.Code § 21206.7 (West 1981). This statute merely requires that when property is taken by the police, a receipt must be given. It does not specify the manner in which it is to be taken.

In *Christians,* a pawnbroker was arrested and charged with interference with an officer's performance of his duties when she refused to give the officer an allegedly stolen ring in exchange for a receipt. 267 Cal.Rptr. at 125. She sued for false arrest and imprisonment, contending that the officer was required to place a hold on the property pursuant to section 21647 and not to seize it. *Id.* The court of appeals held that section 21647 was merely an alternative procedure and that the officer was entitled to seize the property under the plain view exception. *Id.* at 125-26.

As *Christians* holds, involuntary seizure is a necessary adjunct to section 21647. Section 21647(b) currently provides:

> Whenever property that is in the possession of a pawnbroker, secondhand dealer, or coin dealer is subject to a hold and the property is required by a peace officer in a criminal investigation, the pawnbroker, secondhand dealer, or coin dealer, upon reasonable notice, shall produce the property at reasonable times and places or may deliver the property to any peace officer upon the request of any peace officer who is a member of the law enforcement agency of which the peace officer placing the hold on the property is a member.

All would concede that the police must necessarily be able to take possession of property legitimately needed for a criminal investigation or for evidence in a trial. *1102 Section 21647(b) provides for voluntary release of the property to the police. The statute is worded so as to protect the pawnbroker from liability if he does so. It neither gives the pawnbroker a right to withhold from the police property that they need for criminal investigatory purposes, nor precludes the police from seizing it. The police can either place a hold on the property, take possession of the property upon voluntary delivery by the pawnbroker, or seize the property and provide the receipt required by section 21206.7.

As we interpret the statutory provisions, when the need for the property for criminal investigative purposes or evidence in a trial has ended (however possession was taken), the property is to be returned to the pawnbroker. The remaining provisions of section 21647 apply to resolve the right to possession and enjoyment of the property.

Appellants' primary contention is that property is being seized by the police to be returned to the person reporting it stolen, rather than to the pawnbroker whose possessory interest was deposed by the seizure. Section 21647 obviously was intended to present a mechanism for easily compromising conflicting interests in the property after the needs of the police have ended. It was intended to permit pawnbrokers to voluntarily cooperate without incurring civil liability for doing so and without relinquishing any property rights. This interpretation of section 21647 preserves the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093

989 F.2d 1093

(Cite as: 989 F.2d 1093)

Page 10

carefully designed provisions of the statute, regardless of how the police acquire possession. Under this interpretation of section 21647, we doubt that involuntary seizure will be necessary. There is no valid reason for the pawnbroker not to deliver possession of the property to the police as provided in section 21647(b), as an alternative to continuing to hold the property during the time the police require it for criminal investigatory or evidentiary purposes.

### VII. *CONCLUSION*

The police clearly are not authorized by California law to seize property from a pawnbroker for the purpose of returning it to the person who has reported the property stolen. There is a genuine issue of material fact as to whether the police seized the property from the pawnbroker for that purpose, rather than as evidence in a criminal investigation. More importantly, there is evidence that this is a standard practice of the Oakland Police Department, which may justify injunctive relief. The forms used by the Oakland Police Department comply with neither section 21647 nor section 21206.7. The forms used purport to comply with section 21647 but, instead, appear to provide an unauthorized mechanism for turning the property over to the person reporting the property stolen, rather than returning it to the pawnbroker. Section 21206.7 requires that the reason for the seizure be specified. The forms used do not specify in compliance with section 21206.7 that the property is being seized for investigatory purposes, as the City now contends. We therefore reverse the summary judgment and remand the case to the district court for further proceedings in accordance with this opinion.

**REVERSED and REMANDED.**

### APPENDIX A
§ 21647. Peace officer hold on property

(a) Whenever any peace officer has probable cause to believe that property, except coins, monetized bullion, or "commercial grade ingots" as defined in subdivision (d) of Section 21627, in the possession of a pawnbroker, secondhand dealer, or coin dealer is stolen, the peace officer may place a hold on the property for a period not to exceed 90 days. When a peace officer places a hold on the property, the peace officer shall give the pawnbroker, secondhand dealer, or coin dealer a written notice at the time the hold is placed, describing the item or items to be held. During that period the pawnbroker, secondhand dealer, or coin dealer shall not release or dispose of the property, except pursuant to a court order or upon receipt of a written authorization signed by any peace officer who is a member of the law enforcement agency of which the peace officer placing the hold on the property is a member. A pawnbroker, secondhand property dealer, or coin dealer *1103 shall not be subject to civil liability for compliance with this section.

(b) Whenever property that is in the possession of a pawnbroker, secondhand dealer, or coin dealer is subject to a hold and the property is required by a peace officer in a criminal investigation, the pawnbroker, secondhand dealer, or coin dealer, upon reasonable notice, shall produce the property at reasonable times and places or may deliver the property to any peace officer upon the request of any peace officer who is a member of the law enforcement agency of which the peace officer placing the hold on the property is a member.

(c) Whenever property that is in the possession of a pawnbroker, secondhand dealer, or coin dealer is subject to a hold and the property is no longer required for the purpose of criminal investigation, the law enforcement agency that placed the hold on the property shall undertake the following:

(1) With respect to the property being held, if the law enforcement agency has no knowledge of the property on hold being reported as stolen, the property shall be released.

(2) If the law enforcement agency has knowledge that property has been reported stolen, the law enforcement agency shall give written notification to the person who reported the stolen property of the name and address of the pawnbroker, secondhand dealer, or coin dealer holding the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093 Page 11

989 F.2d 1093

(Cite as: 989 F.2d 1093)

property, authorize the release of the property to that person, and advise the person that the law neither requires nor prohibits payment of a fee or any other condition in return for the surrender of the property. A copy of the notice with the address of the claimant deleted shall be mailed to the pawnbroker, secondhand dealer, or coin dealer who is in possession of the property. The person who reported the stolen property shall present a police hold release to the pawnbroker, secondhand dealer, or coin dealer prior to the person receiving the item. Notwithstanding the foregoing, if the alleged owner does not choose to participate in the prosecution of an identified alleged thief, the alleged owner shall pay the pawnbroker, secondhand dealer, or coin dealer the "out of pocket" expenses paid in the acquisition of the allegedly stolen property in return for the surrender of the property. If no action is taken to recover the property by the person who reported the property stolen within 60 days after the date that the notice was mailed, or if the property was not placed on hold, 60 days after a law enforcement officer advised the pawnbroker, secondhand dealer, or coin dealer that the property may be stolen property, the pawnbroker, secondhand dealer, or coin dealer in possession of the property may treat the property as regularly acquired in the due course of business.

(3) If a pledgor seeks to redeem property that is subject to a hold, the pawnbroker, secondhand dealer, or coin dealer shall advise the pledgor of the name and badge number of the peace officer who placed the hold on the property and the name of the law enforcement agency of which the officer is a member. If the property is not required to be held pursuant to a criminal prosecution, the hold shall be released.

(d) Whenever information regarding allegedly lost or stolen property is entered into the Department of Justice automated property system or automated firearms system, and the property is thereafter identified and found to be in the possession of a pawnbroker, secondhand dealer, or coin dealer, and the property is thereafter placed on a hold pursuant to this section and the hold, including any additional hold, is allowed to lapse, or 60 days elapse following the delivery of the notice required to be given by this section to the person who reported the property to be lost or stolen without a claim being made by that person, whichever is later, the pawnbroker, secondhand dealer, or coin dealer may mail under a Certificate of Mailing issued by the United States Post Office, addressed to the law enforcement agency that placed the property on hold, a written request to delete the property listing from the Department of Justice automated property system or automated firearms system, as is applicable. Within 30 days after the request has been mailed, the law enforcement agency shall either cause the property listing *1104 to be deleted as requested or place a hold on the property. If no law enforcement agency takes any further action with respect to the property within 45 days after the mailing of the request, the pawnbroker, secondhand dealer, or coin dealer may presume that the property listing has been deleted as requested and may thereafter deal with the property accordingly, and shall not be subject to liability arising from the failure of the removal of the property listing from the Department of Justice automated property system or automated firearms system.

(Amended by Stats.1987, c. 941, § 4; Stats.1988, c. 1215, § 1; Stats.1989, c. 371, § 1; Stats.1989, c. 884, § 6; Stats.1990, c. 14 (A.B.1671), § 2, eff. March 9, 1990; Stats.1992, c. 647 (A.B.2720), § 4.)

COPY

APPENDIX B
CITY OF OAKLAND
Police Administration Building

455 7th Street

Oakland, California 94607

Police Department Date: 19 Dec. 88

Store: United Jewelry Mart Pledge #: 66606

Property Released To: J. Madarang 7157C for M. Watson

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

989 F.2d 1093 Page 12

989 F.2d 1093

(Cite as: 989 F.2d 1093)

Property to Be Released: Camera, Canon, Ser. # 1569291

This letter will authorize the release of property described above which now has a 90 day hold placed by the Oakland Police Department. The property had been reported stolen and an investigation was conducted. It is the determination of that investigation that the above named person is the lawful owner and entitled to immediate possession.

The above named person is hereby advised that section (21647C(2)B & P neither requires NOR prohibits payment of a fee or any other condition in return for surrender of the property.

If the above described property is not claimed within 60 days, then it is to be treated as regularly acquired property by the pawnshop/secondhand dealer.

Inspectional Services Unit

Oakland Police Department

(Sgt. J. Crawford 273-3725)

COPY

APPENDIX C
NOTICE OF CLAIM OF OWNERSHIP
Oakland Police Department
To: UNITED JEWELRY

Address: 1715 Telegraph Ave.

Oakland, Ca. 94612

Mr. Michael Watson states that he/she is the owner of the

Name of Claimant

Camera and Lens that the Police Department seized from you

Item

on December 19th 1988.

Date

The Police Department is satisfied that he/she is the owner of the property because Mr. Watson made a robbery police report on July 6th 1988, three months before the camera was pawned. Mr. Watson additionally provided the serial numbers of the camera and lens.

Unless you give us reason to believe otherwise by January 9th, 1989, we will turn the item over to the claimant.

Date in Twenty Days

You may give us your reasons for disputing his/her claim to the property either personally or in writing, but in either case, we must receive all the relevant information and documents by

January 9th, 1989.

Date in Twenty Days

Investigator's Signature /s/ Sgt. C.D. Stewart Date 19 Dec. 88

455 Seventh Street, Oakland, Ca., 94607, Room 235 Telephone 273-3951

*1105 (Investigator: Send this notice by certified mail.)

989 F.2d 1093

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
* * *  Transmission Result Report(MemoryTX) ( Jul.22. 2005 11:21AM ) * * *
                                                                        )

Date/Time: Jul.22. 2005 11:17AM

 File
 No. Mode          Destination              Pg(s)      Result         Page
                                                                      Not Sent
 -----------------------------------------------------------------------------
 2846 Memory TX    18314542353              P. 14      OK
      User Code *******


 Reason for error
   E.1) Hang up or line fail              E.2) Busy
   E.3) No answer                         E.4) No facsimile connection
```



The Law Offices of
JON WEBSTER

July 22, 2005

*Sent via Facsimile to (831) 454-2353*
*and by United States Mail*

Detective Art Frolli
Santa Cruz County Sheriff's Office
701 Ocean Street, Room 340
Santa Cruz, CA 95060

    Re:    Confirmation of Receipt of 90 Day Property Hold (Cal. B&P §21647)
    Served on:  My Client:  The Gold Mart
                                    2001 Camden Ave, San Jose, CA
    in re:    Collateral Loan Tickets, Nos. 4020, 4021, and 4022

Detective Frolli:

This letter, also sent via facsimile, will confirm my client's receipt of the hold you have placed on the property associated with collateral loan contracts numbers 4020, 4021 and 4022. Said property will be set aside per Business and Professions Code, Section 21647. This property will be held for the statutory 90 days, unless my client is notified otherwise. Thank you for acknowledging and following this procedure.

As a courtesy, I would request that a copy of your crime report be forwarded to the City of San Jose police department and/or the Santa Clara District Attorney's Office with a request that your investigation be considered for criminal prosecution by these agencies for a violation of California Penal Code, Section 484.1, False Information to a Pawnbroker; to wit, The Gold Mart.

Finally, enclosed with the original of this letter, you will find a copy of the Ninth Circuit Court of Appeal decision in the case entitled, *G&G Jewelry v. City of Oakland* 989 F.2d 1093 (1993). I provide this in follow-up to the voice mail message I left at your desk last Friday, July 15th.

1985 BONIFACIO STREET • SUITE 102 • CONCORD, CA 94520-2264
TELEPHONE (925) 686-8790 • WEBSITE WWW.JWCOUNSEL.COM • FACSIMILE (925) 686-8795
ADMITTED IN CALIFORNIA, ARIZONA, HAWAI'I AND WASHINGTON D.C.